**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Larry Wayne CASSITY, Stephen Gordon Lenk, Billy Sword, Terry Gene Hines and Raymond Lee Dean, Defendants–Appellants.**

Nos. 78–5426 to 78–5430.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted Dec. 13, 1979.

Decided Oct. 16, 1980.

James K. Robinson, U. S. Atty., Ross G. Parker, David L. Maurer, Asst. U. S. Attys., Detroit, Mich., for United States.

Edward C. Wishnow, Southfield, Mich. (Court–appointed), for Cassity and Lenk.

Thomas Rosender, Detroit, Mich. (Court–appointed), for Sword.

John F. Mayer, Detroit, Mich. (Court–appointed), for Hines.

Thomas E. Jackson, Kenneth R. Sasse, Detroit, Mich., for Dean.

Before LIVELY and BOYCE F. MARTIN, Jr., Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

The defendants–appellants challenged their convictions for conspiring to manufacture and manufacturing amphetamine, a controlled substance. They argue the evidence on which they were convicted is the fruit of illegal electronic surveillance. We vacate the judgments and remand the cases for hearings to determine whether the use of beepers or electronic homing devices by the Government in this case violated the individual defendants' legitimate expectations of privacy. *See United States v. Bailey,* 628 F.2d 938 (1980).

These cases arose from the undercover investigative efforts of Special Agent John Graetz of the Drug Enforcement Administration (DEA). From April to August 1977, Agent Graetz posed as a supplier of precursor chemicals and laboratory glassware to Jay Cody, who is alleged to be the central figure in the conspiracy. Cody apparently coordinated the conspirators' operations, arranged to obtain necessary chemicals and equipment and delivered samples of amphetamine manufactured in the conspirators' clandestine laboratory.

Among the chemicals and equipment Agent Graetz delivered to Cody at various times were secreted three electronic homing devices, or beepers. Two were located in cans of precursor chemicals and one was hidden in a heating mantle. All three beepers were installed pursuant to search warrants issued by a United States Magistrate. However, none of the warrants contained a time limit.

Agent Graetz delivered the first beeper on July 11, 1977. By monitoring the beeper's signals, DEA agents traced the chemicals to defendant Cassity's home at 2803 Stair Street in Detroit. On July 15, the beeper's signals indicated the chemicals had been moved to defendant Sword's home at 1494 Calvary in Detroit. On July 28, Agent Graetz delivered the other two beepers, which also were monitored to Sword's home. On August 11, 1977, all three beepers were located in the basement of defendant Dean's home at 6344 Hanson in Detroit.

DEA agents monitored the beepers' signals until August 17. They observed all five defendants and Cody enter and leave the house at 6344 Hanson at various times during the monitoring. On three occasions during the beeper surveillance, Cody delivered samples of amphetamine allegedly produced by the conspirators.

On August 17, 1977, DEA agents executed a search warrant at 6344 Hanson. In the basement, they found a complete laboratory which expert testimony established was capable of producing amphetamine. The agents did not, however, find any trace of amphetamine on the premises. Investigation revealed that a number of chemical containers and pieces of laboratory equipment bore the fingerprints of defendants Lenk, Sword, Dean and Hines.

The defendants were indicted, along with Cody, for conspiring to manufacture and manufacturing amphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment also charged Cody with ten counts of possessing and distributing amphetamine. However, Cody remained a fugitive and was not tried with the appellants.

The case went to trial on July 18, 1978. The Government's case against the appellants consisted primarily of testimony that all the appellants had been observed in and around the laboratory's location (Dean's home) the day of the search; that Cassity and Sword previously had stored precursor chemicals and laboratory equipment in their homes; that Hines had picked up chemicals and glassware left in a rented van by Agent Graetz; that Lenk was in the laboratory at the time of the search; and that fingerprints of four of the appellants were found on glassware in the laboratory. In addition, the Government introduced tape recordings of Cody's numerous telephone conversations with Agent Graetz, as well as the samples of amphetamine Cody had delivered to Graetz.

The jury convicted all five appellants of conspiracy and manufacturing amphetamine. These are direct appeals from the convictions.

## I

Appellants' first assignment of error concerns the decision of the district court to admit Cody's recorded telephone conversations under the co–conspirator exception to the hearsay rule. Specifically, the appellants argue the court erred by admitting Cody's out of court statements conditional-

ly, subject to the requirement that the Government's proof establish each defendant was a member of Cody's conspiracy. Furthermore, the appellants question whether there was sufficient independent evidence to support the court's preponderance of the evidence finding of conspiracy. Finally, the appellants argue, even if the evidence did establish a conspiracy, only Cody's statements made after they joined the conspiracy were admissible against them. We reject each of these contentions in turn.

First, the procedure followed by the district court for dealing with the co–conspirator statements clearly was permissible. When the defendants objected to the attempt by the Government to introduce Cody's recorded telephone conversations, the district court adopted the following procedure: The recorded conversations would be admitted conditionally; if the preponderance of the evidence did not establish that each defendant had been a member of Cody's conspiracy, the court would dismiss the conspiracy count and instruct the jury to disregard the tapes. In *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980), this court specifically authorized trial courts to deal with hearsay objections to co–conspirator statements by "admit[ting] the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." The ruling of the district court in the present case substantially anticipated our *Vinson* decision and we find no error in the procedure adopted.

■ Second, we conclude that the evidence was sufficient to support the finding of conspiracy by the district court on the preponderance of the evidence. Cassity, Sword and Dean all stored the precursor chemicals and laboratory equipment in their homes. Hines was identified as the person who accompanied Cody to a prearranged location to pick up a rented van Agent Graetz had filled with chemicals and glassware. Cody, Lenk, Dean and Hines were observed leaving the basement laboratory

on August 16, and Cassity drove to and from the laboratory several times on August 17. Fingerprints of all the appellants except Cassity were found on the laboratory equipment seized in the August 17 raid. Appellant Lenk was present in the laboratory when the search took place. Even disregarding the substance of Cody's recorded statements, which the district court could have considered under the decision by this court in *Vinson, supra,* 606 F.2d at 153, there was ample evidence to support the preliminary finding of conspiracy by the court.

█ Finally, we reject the argument by appellants that only those co–conspirator statements made after they joined the conspiracy are admissible against them. The argument rests upon a part of one sentence from *United States v. Petrozziello,* 548 F.2d 20, 23 (1st Cir. 1977), quoted by this court in *United States v. Enright,* 579 F.2d 980, 986 (6th Cir. 1978): "if it is more likely than not that the declarant and the defendant were members of a conspiracy *when the hearsay statement was made,*" the hearsay may be admissible. (Emphasis added.) In *Petrozziello,* the First Circuit adopted the preponderance of the evidence test for determining admissibility of co–conspirators' statements. Neither *Petrozziello* nor *Enright* concerned the time at which the co–conspirator statements were made. The quoted phrase from *Petrozziello* on which appellants rely is mere dictum and does not represent the law of this Circuit. We are bound by the ruling of the Supreme Court in *United States v. United States Gypsum Company,* 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948):

> With the conspiracy thus fully established, the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy, become admissible against all as declarations or acts of co–conspirators in aid of the conspiracy. (Footnote omitted.)

*See also United States v. Ramirez,* 482 F.2d 807, 816 (2d Cir.), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973);

*United States v. Sarno,* 456 F.2d 875, 878 (1st Cir. 1972).

## II

The appellants also challenge their convictions on the ground the Government's evidence against them is the fruit of illegal search and seizure and, therefore, should have been suppressed. We remand the cases to the district court to conduct hearings on the suppression issue.

Before trial, defendant–appellant Cassity moved to suppress all evidence the DEA acquired directly or indirectly through the beeper surveillance. He argued that the fourth amendment requires the Government to obtain a warrant to install and monitor beepers, and that the warrants the Government obtained in this case were invalid because unlimited in duration. Consequently, Cassity urged, monitoring the beepers was an illegal search whose fruits must be suppressed. The district court rejected Cassity's argument, holding the use of a beeper is no more than a sophisticated substitute for visual surveillance and does not require a warrant.

Our decision in *United States v. Bailey, supra,* 628 F.2d 938 (6th Cir. 1980), undercut this ruling of the district court by holding beeper surveillance may invade an individual's legitimate expectations of privacy and, therefore, require a warrant. Furthermore, in *Bailey* we held a warrant containing no time limit does not meet fourth amendment requirements and so cannot legitimate an otherwise invalid search. In *Bailey* we also decided that suppressing the fruits of the monitoring is the appropriate judicial response to illegal beeper surveillance.

█ Given our *Bailey* decision, the only remaining issue in Cassity's case is whether the beeper surveillance by the Government invaded his legitimate expectations of privacy. Because the district judge held beeper surveillance does not require a warrant, he found it unnecessary to hear evidence on the expectation of privacy issue. As our *Bailey* decision makes clear, the question whether beeper surveillance in a case constitutes a search or seizure requiring a war-

rant is inextricably intertwined with the question whether the surveillance violated the individual's legitimate expectations of privacy in that particular case. Because the record before this court does not permit us to decide whether the beeper surveillance violated Cassity's legitimate expectations of privacy, we remand the case to the district court for a second suppression hearing.

On remand the district court should undertake the analysis this court outlined in *Bailey.* As we pointed out there, if either the installation or the monitoring of the beeper violated the defendant's legitimate expectations of privacy, the court ordinarily should grant the motion to suppress. In this case, however, the Government had rightful possession and control of the cans and heating mantle when the beepers were installed. Accordingly, the installations could not have violated Cassity's privacy expectations. On the other hand, there seems to be no dispute that Cassity unsuspectingly took a can of non–contraband chemicals containing a beeper into his home. If the chemicals were stored in an area of the home shielded from public view and protected against warrantless governmental intrusion, Cassity would appear to have exhibited a subjective expectation of privacy which the Government violated by monitoring the beeper's signals. Moreover, if there was such a subjective privacy expectation, *Bailey* indicates it was legitimate. Nevertheless, a final decision on Cassity's suppression motion must await further fact finding by the district court.

■ Because the remaining appellants did not join in Cassity's pre–trial motion to suppress, their suppression arguments before this court are more troublesome. The Government urges us to hold Lenk, Sword, Hines and Dean waived their fourth amendment objections to the beeper surveillance by failing to raise them before trial as required by Fed.R.Crim.P. 41(f), 12(b)(3), and 12(f). Although this court ordinarily refuses to consider search and seizure claims not raised by a pre–trial motion, we conclude under the peculiar facts and cir-

cumstances of this case the failure of the other appellants to join Cassity in moving to suppress does not bar appellate consideration of their arguments.

■ As the Supreme Court has recognized, the rule requiring criminal defendants to make their suppression motions before trial "is a crystallization of decisions . . . requiring that procedure, and is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt." *Jones v. United States,* 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1959), overruled on other grounds, *United States v. Salvucci,* —— U.S. ——, 100 S.Ct. 2547, 65 L.Ed. 2d 619 (1980). The rationale usually given for removing suppression questions from the trial itself is that "interrupt[ing] the course of the trial for such auxiliary inquires impedes the momentum of the main proceeding and breaks the continuity of the jury's attention." *Nardone v. United States,* 308 U.S. 338, 342, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). *See Giacona v. United States,* 257 F.2d 450, 455 (5th Cir.), *cert. denied,* 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958). Furthermore, a pre–trial decision whether the challenged evidence is admissible gives the Government the time and flexibility to change its theory of the case, to develop or place greater reliance upon untainted evidence or otherwise to modify its trial strategy in response to an adverse ruling. *See United States v. Rollins,* 522 F.2d 160, 166 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976); *United States v. Sisca,* 503 F.2d 1337, 1348 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974).

In applying the pre–trial motion rule, "we are dealing with and carrying out an important social policy and not a narrow, finicky procedural requirement." *Jones v. United States, supra,* 362 U.S. at 264, 80 S.Ct. at 732. Where the rule's underlying policy is not implicated, its technical requirements should not be allowed to prevail over constitutional rights.

In the present case, consideration of the remaining appellants' fourth amendment

claims does not jeopardize the Government's interests. Cassity's pre–trial notice raised the beeper issue in timely fashion. The trial court heard evidence and argument about the beeper surveillance and its fourth amendment implications. Had the court granted Cassity's motion to suppress, the remaining defendants presumably would have filed similar motions. These also could have been dealt with before trial without impairing the flexibility of the Government in proceeding with the prosecution. However, the district court concluded as a matter of law beeper surveillance does not constitute a search within the meaning of the fourth amendment. Additional fourth amendment challenges by the other appellants raising the identical legal issue would neither have altered the court's ruling nor served the purposes of the pre–trial motion rule. Under these circumstances, we hold the remaining appellants did not waive their fourth amendment objections by neglecting to perform the useless and purely formal act of joining Cassity in moving to suppress. *See United States v. Love*, 472 F.2d 490, 493 n.4, 496 (5th Cir. 1973); *United States v. Lefkowitz*, 284 F.2d 310, 313 n.1 (2d Cir. 1960).

The judgments of conviction are vacated and the cases are remanded to the district court for hearings on the suppression issue. Appellants Lenk, Sword, Hines and Dean shall be permitted to join in Cassity's motion to suppress. Because fourth amendment rights are personal, *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978), the district court should consider the claim of each appellant separately. The court shall order a new trial for, and grant the suppression motion of, each appellant whose legitimate expectations of privacy are found to have been violated by the beeper surveillance. *See United States v. Bailey, supra.* Any appellant whose fourth amendment rights were not violated has no right to a new trial, and his conviction should be reinstated. *Cf. Rakas v. Illinois, supra,* 439 U.S. at 134, 99 S.Ct. at 425; *United States v. Hunter*, 550 F.2d 1066, 1074–75 (6th Cir. 1977).