956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leroy APPLIN (91-5284), Ralph Bernard Bruno (91-5285),
Defendants-Appellants.
 Nos. 91-5284, 91-5285.
 United States Court of Appeals, Sixth Circuit.
 March 12, 1992.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Codefendants Leroy Applin and Ralph Bernard Bruno appeal from their convictions for possession with intent to distribute crack cocaine. See 21 U.S.C. § 841(a)(1). Bruno and Applin contend that the district court abused its discretion by denying their joint motion to suppress evidence under the waiver provisions of Federal Rule of Criminal Procedure 12(f). We affirm the ruling of the district court.
 
 I.
 
 2
 On April 11, 1990 at approximately 10:00 p.m., Memphis police officers armed with a valid search warrant for one of the rooms went to the Skyway Motel. The officers knocked on the room door and received no response. According to the officers' trial testimony, seconds later they smashed the door open with a battering ram. Only after the officers drove the door in with the ram did one of them shout, "police officers!"
 
 
 3
 The officers further testified that as they entered the room, the police saw Applin and Bruno kneeling next to each other in front of a dresser. Four piles of crack cocaine and a razor blade lay on the dresser. The piles had been separated by size, large and small, and two of the piles were wrapped in cellophane.
 
 
 4
 The officers saw a third man standing in the bathroom. On the bathroom vanity were test tubes, baking soda, an ice bucket filled with alcohol and a makeshift torch. Generally, this assortment of equipment is used to process crack.
 
 
 5
 After completion of the government's case, Applin and Bruno made an oral motion to suppress evidence. See Fed.R.Crim.P. 12(b)(3). The men asserted that the Memphis police violated Tennessee law and the fourth amendment of the federal constitution by failing to knock and announce their purpose prior to entering the hotel room, and any evidence seized as a result of the unlawfully executed warrant should be excluded. See Tenn.R.Crim.P. 41(e) ("knock and announce" rule); United States v. Francis, 646 F.2d 251, 258 (6th Cir.), cert. denied, 455 U.S. 1082 (1981) ("the fourth amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances").[1] Substantively, Tennessee Rule of Criminal Procedure 41(e) mirrors the federal "knock and announce" provision. Compare Tenn.R.Crim.P. 41(e) with 18 U.S.C. § 3109. Tennessee officers executing a state warrant must knock and announce their authority prior to entering a building. Tenn.R.Crim.P. 41(e); State v. Fletcher, 789 S.W.2d 565, 566 (Tenn.Crim.App.1990). By stating their authority only after they knocked down the door, Applin and Bruno argued that the Memphis police officers violated this rule and any evidence seized at the hotel should be suppressed. The district court took the motion under advisement, offering the government the opportunity to respond.
 
 
 6
 With the motion to suppress pending, the defense presented its case. Bruno testified at trial that he arrived at the hotel at 4:30 p.m.. When he got to the room, two other men were there. Bruno claimed not to know who had rented the room.[2] These men left around 6:30 p.m., and Bruno remained in the room alone until 9:00 p.m. when Applin arrived with another man. The group turned on the television to watch a basketball game, and Bruno fell asleep at 9:15 p.m. while watching the game. Bruno said he did not wake up until the police had already entered the room. Bruno stated that he had not seen drugs or drug paraphernalia in the room before he fell asleep. Applin did not testify.
 
 
 7
 The jury convicted both Bruno and Applin of possession with intent to distribute 38.4 grams of crack cocaine. Two months later, the district court denied the motion to suppress.
 
 
 8
 The district court denial of the motion was based largely on its untimely nature. Rule 12(b)(3) requires motions to suppress to be made prior to trial. Fed.R.Crim.P. 12(b)(3). Rule 12(f) describes the consequences of the failure to bring motions to suppress in a timely manner:
 
 
 9
 Failure by a party to raise defenses or objections or to make requests which must be made prior to trial ... shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.
 
 
 10
 Fed.R.Crim.P. 12(f).
 
 
 11
 The district court refused to grant relief from the Rule 12(f) waiver provisions. The court found no credible explanation for Bruno and Applin's ignorance of the officers' failure to announce their authority prior to ramming the door. The court also cited the defense failure to conduct any pretrial interviews with the officers to uncover this evidence. Given this lack of cause, the court deemed the rights waived under Rule 12(f). We review denials of motions to suppress under an abuse of discretion standard. United States v. Worthington, 698 F.2d 820 (6th Cir.1983).
 
 
 12
 On appeal, Bruno and Applin argue that an untimely motion should not constitute a waiver of rights under Rule 12(f) when the waiver would not support the social policy behind the rule. In United States v. Cassity, 631 F.2d 461 (6th Cir.1980), this court articulated the policy behind Rule 12(f):
 
 
 13
 The rationale usually given for removing suppression questions from the trial itself is that 'interrupt[ing] the course of the trial for such auxiliary inquiries impedes the momentum of the main proceeding and breaks the continuity of the jury's attention.' Furthermore, a pre-trial decision whether the challenged evidence is admissible gives the Government the time and flexibility to change its theory of the case, to develop or place greater reliance upon untainted evidence or otherwise to modify its trial strategy in response to an adverse ruling.
 
 
 14
 Cassity, 631 F.2d at 465 (citations omitted). Bruno and Applin argue that Cassity and our later decision in United States v. Crismon, 905 F.2d 966 (6th Cir.1990) establish a rule requiring district courts to allow late motions to suppress unless doing so would implicate the policy rationales outlined in Cassity.
 
 
 15
 Bruno and Applin continue by arguing that their late motion to suppress did not implicate any of the policies behind Rule 12(f). Testimony about the time between the knock and the entry had independent relevance to the question of why Bruno and Applin were next to the dresser,[3] and so this line of questioning did not constitute the sort of "auxiliary inquiry" warned about in Cassity. A late motion would not affect the government's trial strategy because a successful motion here would have eliminated all of the government's physical evidence. Therefore, Bruno and Applin assert that the trial court abused its discretion when it denied their motion to suppress.
 
 
 16
 The government argues that the term "cause" in Rule 12(f) is not synonymous with "underlying policy." In order to succeed on a late motion, the government contends the defendant must show both cause and lack of a policy reason to deny the motion. See United States v. Worthington, 698 F.2d 820 (6th Cir.1983) (upholding denial of a late motion to suppress). Here, the government continues, the defendants could show neither and the district court correctly denied the motion.
 
 
 17
 We agree with the government that this case implicates the underlying policy of Rule 12(f). While the testimony as to the time between the knock and the entry may have had independent relevance, other necessary portions of potential testimony would not have had independent relevance. For instance, testimony on possible exigent circumstances excusing compliance with the rule and evidence of the defendants' standing to challenge the search would have required "breaking the jury's attention" while the court conducted an "auxiliary inquiry." Furthermore, an earlier motion would have given the government the flexibility to pursue the questions of standing and exigent circumstances. Since Bruno and Applin's motions did implicate the policy underlying Rule 12(f), we find it unnecessary to decide whether an absence of policy rationales to support a Rule 12(f) waiver requires a district court to allow an otherwise untimely motion.
 
 
 18
 Judgment AFFIRMED.
 
 
 
 [1]
 The state rules govern here because state officers entered under a state warrant, and the federal rule applies solely to federal officers. See 18 U.S.C. § 3109
 
 
 [2]
 Neither Bruno nor Applin offered further evidence of their standing to protest the search of the hotel room. See, e.g., United States v. Salvucci, 448 U.S. 83 (1980) (One challenging legality of search must prove standing to assert fourth amendment rights). The joint motion to suppress did not contain a request for a hearing to offer further testimony about possessory interests in the room. The defendants could have offered further information in a suppression hearing without fear that it would be used against them at trial on the issue of guilt, but did not do so. See Simmons v. United States, 390 U.S. 377 (1968)
 
 
 [3]
 Interestingly, Bruno testified that he was in bed, not next to the dresser, when the officers entered the room