14 F.3d 602
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Tony BARBER, Defendant-Appellant.
 No. 93-5239.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1994.
 
 Before: KENNEDY, MILBURN, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Tony Barber, appeals his convictions for one count of conspiracy to possess with intent to distribute cocaine and three counts of aiding and abetting possession with intent to distribute cocaine. Two of the aiding and abetting convictions involved distribution of cocaine within 1,000 feet of a playground. Barber also contends that his sentence was improperly enhanced under U.S.S.G. Secs. 3B1.1 and 3C1.1. We affirm.
 
 I.
 
 2
 In the fall of 1991, Detective Randy Gibbs began an undercover investigation of drug trafficking activities in Warren County, Kentucky. With the aid of a confidential informant, Gibbs bought marijuana from Roy Glenn Carter and David Dennis on a number of occasions. On one such occasion, Gibbs and the informant expressed a desire to buy cocaine from Carter and Dennis, and the group arranged a meeting at Lampkin Park for November 27, 1991.
 
 
 3
 Gibbs and the informant arrived at the Park first, and Carter was dropped off by Tony Barber. Barber then drove away and Carter sold Gibbs an "eight ball" (3 1/2 grams) of cocaine for $300. Gibbs and the informant then drove Carter to a nearby supermarket, where Barber was waiting for him. The following week, Gibbs and the informant purchased another eight ball of cocaine from Carter, who then was accompanied by Dennis.
 
 
 4
 Carter later agreed to sell a larger quantity of cocaine and indicated he might introduce his "source" to Gibbs when this sale took place. Gibbs and the informant met Carter on December 17, but Carter explained that "Tony" was absent because he had to work. Gibbs bought three eight balls of cocaine from Carter for $800.
 
 
 5
 The group later arranged another cocaine transaction for December 23, 1991. Gibbs and the informant again arrived at the meeting site first. Gibbs was wearing a body wire. Carter arrived in his car, accompanied by Barber, and waved for Gibbs to follow him to another location. Carter drove to his home, dropped off Barber, and told Gibbs to drive to a nearby A & W restaurant. Gibbs did so and Carter arrived 45 minutes later. When Carter discovered Gibbs's body wire, Gibbs arrested Carter.
 
 
 6
 While being processed shortly after his arrest, Carter told Gibbs and Detective Trosper that Barber was his supplier of drugs and that Barber made frequent trips to Nashville to purchase large quantities of drugs. After Carter was released on bail the following day, he met with Dennis and Barber and assured them that he had not mentioned their names to the police. Carter then left, and Barber told Dennis that he might "take out a hit" on Carter to make sure that Carter did not talk to the police. Dennis interpreted this remark as a threat to himself as well as to Carter, but nonetheless "just blew it off."
 
 
 7
 Gibbs visited Barber's home in April 1992, before Carter was indicted. By this time, Barber knew that Gibbs was a police detective. Gibbs wore plain clothes and asked Barber to talk with him. Barber agreed. Gibbs claims he advised Barber of his Miranda rights, but Barber denies this claim. In any event, the pair conversed in Gibbs's car for about 45 minutes while Gibbs took notes. By all accounts, this conversation was relaxed and informal. Gibbs told Barber that he was suspected of drug trafficking and that he probably would be indicted. Barber admitted to accompanying Carter to meet Gibbs on November 27, 1991, and December 23, 1991, but denied knowing that Carter intended to sell drugs on those occasions. Barber further asserted that he "never touched" cocaine, although he admitted he knew Carter sometimes sold cocaine. Gibbs concluded the discussion by stating he "wasn't fooled" by Barber's story.
 
 
 8
 A federal grand jury returned a seven-count indictment against Barber, Carter, and Dennis in May 1992. Carter and Dennis pled guilty to various counts, but Barber proceeded to trial on the four counts on which he was charged. A jury found Barber guilty on all four counts, and the district judge sentenced Barber to four concurrent terms of 44 months' imprisonment and six years' supervised release. This appeal followed.
 
 II.
 
 9
 Barber first argues that his due process rights were violated by the admission of portions of eight conversations he claims contained inadmissible hearsay. Whether proffered evidence is hearsay, as defined by the Federal Rules of Evidence, is a legal question which we review de novo. United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990), cert. denied, 498 U.S. 1091 (1991). Barber failed to make a timely objection to the admission of all but statements four and five, however, so our review of the admission of all but those statements is limited to plain error. Id. at 1030; Fed.R.Evid. 103(d). To constitute plain error, substantial rights must be affected. United States v. Olano, 113 S.Ct. 1770 (1993).
 
 
 10
 Statements one, four, and five were Gibbs's explanations of what was being said in tape recorded conversations that the jury was about to hear. Gibbs's testimony was not hearsay because it was not offered to prove the truth of the matter asserted. Rather, it was offered in explanation of the tapes, which were played for the jury in their entirety without objection. Fed.R.Evid. 801(c).
 
 
 11
 Conversations two and three contain statements not offered for the truth of the matter asserted but merely to explain why Detective Gibbs took the action he did and to explain the precautions that were necessary in arranging meetings with Carter. Such statements are not hearsay. Fed.R.Evid. 801(c). Also, since Carter, Dennis, and Gibbs testified at trial, if a hearsay construction is placed on any portion of conversations two and three, the error in admitting such hearsay would be harmless as a matter of law.
 
 
 12
 Statements 6 and 7 are Gibbs's and Detective Trosper's respective responses to questions about Carter's post-arrest remarks:
 
 
 13
 [6.]
 
 
 14
 Q. After placing Mr. Carter under arrest and reading him his rights, did you discuss with him where he had obtained the cocaine he sold you that evening?
 
 
 15
 A. Yes, ma'am, I did.
 
 
 16
 Q. And what did he tell you?
 
 
 17
 A. He said that he had traveled to Nashville, Tennessee, with Tony Barber, that he gave Tony Barber the money or a portion of the money, and that he had to wait for him somewhere there, and Barber goes and gets the cocaine and brings it back to him.
 
 
 18
 ....
 
 
 19
 Q. How long after his arrest?
 
 
 20
 A. Oh, probably maybe 30 to 40 minutes at the most. Within an hour.
 
 
 21
 Q. Okay. At that time he indicated that Tony Barber was his source of supply?
 
 
 22
 A. Yes, he did.
 
 
 23
 Q. And stated that they had obtained it in Nashville?
 
 
 24
 A. Near Nashville.
 
 
 25
 (Tr. II at 114-115.)
 
 
 26
 [7.]
 
 
 27
 Q. Did [Carter] tell you who it was he picked up to go to Nashville, Tennessee to pick up cocaine with?
 
 
 28
 A. Yes, he did.
 
 
 29
 Q. Who was that?
 
 
 30
 A. He said Tony Barber was who he picked up. He went by and picked him up and they drove to Nashville, Tennessee. Once they got to Nashville, he advised that Tony dropped him off at a convenience store. He gave Tony the $3,000 and Tony left and stayed gone a while, came back, picked Roy back up and had the cocaine, three ounces of cocaine, and put it in the glove compartment of the car, and they drove back to Bowling Green.
 
 
 31
 (App. at 207.)
 
 
 32
 The government does not dispute that these statements were hearsay, but contends that Carter's declarations were against his penal interest and thus admissible under Fed.R.Evid. 804(b)(3). This contention is incorrect because the Rule 804 exceptions apply only when the declarant is unavailable to testify at trial, Fed.R.Evid. 804(a), and Carter testified at Barber's trial.
 
 
 33
 No other hearsay exceptions apply to these statements. We observe, however, that Carter himself later testified about the details contained in these statements. Barber nonetheless contends that the admission of these statements was harmful because the statements bolstered Carter's subsequent testimony. This argument may have some merit, but it cannot support a finding of plain error. The detectives merely repeated declarations Carter had made at an earlier time when his incentive to implicate Barber instead of himself was plainly equal to his incentive to do so at trial. See United States v. Young, 470 U.S. 1, 15 (1985) (stating that "the plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result' ") (quoting United States v. Frady, 456 U.S. 152, 164 n. 14 (1982)).
 
 
 34
 Barber's final hearsay argument concerns testimony given by Kentucky State Police Officer James Coulter. At trial and after Carter had testified, Coulter read into evidence a two-page report he prepared immediately after he debriefed Carter in June 1992. This testimony again presented to the jury Carter's account of the conspirators' drug trafficking activities.
 
 
 35
 Coulter's testimony was hearsay. However, the government asserts the testimony was "offered to rebut an express or implied charge against [Carter] of recent fabrication or improper influence or motive[.]" Fed.R.Evid. 801(d)(1)(B). We agree. During his cross-examination of Carter, Barber's attorney insinuated that Carter had implicated Barber to protect himself. When the government called Coulter to rebut this implication, defense counsel did not object and did not even cross-examine Coulter. We believe that under these circumstances Fed.R.Evid. 801(d)(1)(B) excludes Coulter's testimony from falling within the definition of hearsay.
 
 III.
 
 36
 Barber next argues that his due process rights were violated because certain testimony was admitted in violation of Fed.R.Evid. 404(b). This rule provides:
 
 
 37
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 38
 Barber contends that Rule 404(b) was violated by the admission of certain testimony by Dennis and Carter to the effect that Barber supplied them with cocaine for their own recreational use. The government counters that this evidence was not "other acts" evidence because it helped establish the existence of Barber's cocaine distribution conspiracy. Barber failed to object to the admission of this testimony, so we need only determine whether its admission was plain error.
 
 
 39
 The testimony in question indeed was "other acts" evidence because Barber's provision of cocaine to Dennis and Carter for recreational purposes was unrelated to their conspiracy to sell cocaine to others. United States v. Medina, 992 F.2d 573, 581 (6th Cir.1993), petition for cert. filed, 62 U.S.L.W. 3321 (Oct. 18, 1993), is distinguishable from our facts. There, the evidence in question concerned the delivery of a half kilogram of heroin from Medina to a co-conspirator. Unlike the instant case, Medina's delivery was made in the course of his conspiracy and proof of that delivery would establish an element of the offense with which he was charged.
 
 
 40
 The testimony in question nonetheless was admissible under Rule 404(b) to prove intent and opportunity. Barber argued at trial that he personally had no involvement with drugs and that he had been framed by Carter and Dennis. Whether Barber intentionally became involved in cocaine use and whether he had the ability to supply cocaine to others therefore were material issues at trial. Rule 403 likewise was not violated by the admission of this testimony, because the centrality of these issues ensured that the probative value of this testimony was not substantially outweighed by its prejudicial impact, if any.
 
 
 41
 The admission of other acts evidence under 404(b) is normally accompanied by a cautionary instruction to the jury, however, and no such instruction was given here. A trial judge's failure to give sua sponte a cautionary instruction regarding other acts evidence is not plain error unless the evidence is highly prejudicial and of dubious relevance. See United States v. Cooper, 577 F.2d 1079, 1088-89 (6th Cir.), cert. denied, 439 U.S. 868 (1978).
 
 
 42
 Barber also contends that Rule 404(b) was violated by the admission of certain testimony by Melissa Wells. Barber timely objected to this testimony, and thus we review its admission for an abuse of discretion. United States v. Vance, 871 F.2d 572, 576 (6th Cir.), cert. denied, 493 U.S. 933 (1989). According to Wells's testimony, she asked Carter, whom she "casually dated," to sell her an eight ball of cocaine during the time period set forth in the conspiracy charge. Carter called Barber, and Carter and Wells then drove to meet Barber in a parking lot. Carter exited his car and entered Barber's car, where Barber gave Carter the eight ball of cocaine. Carter then returned to his car and sold the eight ball to Wells for $200.
 
 
 43
 Wells's testimony was not "other acts" evidence as to the conspiracy count because, as in Medina, the act in question was taken in the course of and in furtherance of the conspiracy. Wells's testimony was "other acts" evidence as to the possession with intent to distribute counts, because the Wells transaction was not among those set forth in the indictment. This testimony was nonetheless admissible under Rule 404(b) to show intent and opportunity, for the same reasons that the Dennis and Carter testimony was admissible on those grounds. The trial judge gave a strong cautionary instruction to the jury before this evidence was admitted, so there was no error of any kind concerning the admission of Wells's testimony.
 
 IV.
 
 44
 Barber next argues that the trial judge erred in denying his motion for a mistrial after his attorney, Thomas Chimera, elicited testimony about Barber's previous drug charge. This testimony in question was given during an exchange between Chimera and Carter. Carter at one time had been represented by attorney Brad Coffman. After Barber's arrest, Coffman resigned as Carter's attorney because Coffman had represented Barber for a previous drug charge. At trial, Chimera began to question Carter about why Coffman had resigned as his attorney. The assistant United States attorney then approached the bench and advised the judge that Chimera was "getting into a dangerous area." (App. at 199.) The judge expressed doubts about the relevancy of Chimera's line of questioning, but allowed him to continue. The following exchange then took place:
 
 
 45
 Chimera: Well, what [was your] problem [with Coffman]?
 
 
 46
 Carter: Well, that he couldn't be my lawyer because he had represented Tony on a previous drug charge and that--
 
 
 47
 (App. at 277.) Chimera then moved for a mistrial, which the district judge denied. The judge instructed the jury to disregard Carter's remark, and explained:
 
 
 48
 Mr. Carter really doesn't know, the court is telling you that, about whatever Mr. Coffman may or may not have represented Mr. Barber on. So he can't really tell you. The court is ruling that that testimony is unreliable. Therefore you should disregard it.
 
 
 49
 (App. at 282.) The jury indicated to the district judge that they understood and agreed not to consider the testimony.
 
 
 50
 We review the denial of a motion for a mistrial for an abuse of discretion. United States v. Chambers, 944 F.2d 1253, 1263 (6th Cir.1991), cert. denied, 112 S.Ct. 1217 (1992). Fairness to the accused is the primary concern in considering a mistrial motion. Id. If evidence is improperly admitted, "the subsequent striking of the evidence along with clear instructions to the jury to disregard it, ordinarily will cure the error. Only if the evidence is of an exceptionally prejudicial character ... will it be appropriate to grant a new trial." United States v. Carr, 5 F.3d 986, 993 (6th Cir.1993) (citation omitted). Here, the district judge gave the jury a clear instruction to disregard Carter's remark and also gave the jury reason to doubt the accuracy of the remark. The character of the remark, moreover, does not make the jury's promise to disregard the remark appear incredible. The district judge therefore did not abuse his discretion by denying the mistrial motion.
 
 V.
 
 51
 Barber further argues that his Fifth Amendment rights were violated by the admission of Gibbs's account of what Barber said to Gibbs when Gibbs visited Barber's home in April 1992. Barber filed a Fed.R.Crim.P. 12(b)(3) motion to suppress this statement before trial, but after the expiration of the final date for filing such motions as set by the district judge's order pursuant to Rule 6(a)(3) of the Joint Local Rules for the United States District Courts of the Eastern and Western District of Kentucky. The district judge considered the merits of Barber's motion and denied it.
 
 
 52
 The government now argues that Barber's Fifth Amendment argument was not preserved for review because the argument was waived under Fed.R.Crim.P. 12(f). Rule 12(f) provides:
 
 
 53
 (f) Effect of Failure To Raise Defenses or Objections. Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court ... shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.
 
 
 54
 The government relies upon United States v. Sachs, 801 F.2d 839 (6th Cir.1986), where we stated in dicta that "if a party fails to timely file a Rule 12(b) motion, the merits of the motion are not preserved for appeal even if the district court chose to hear the motion; the district court's review of the motion 'does not alter the fact that ... defendant waived the objection under Criminal Rule 12(f).' " Id. at 847 (citation omitted). In United States v. Crismon, 905 F.2d 966, 969 (6th Cir.1990), however, we expressly repudiated this portion of Sachs ("Sachs' language was overly inclusive"), and stated that we will consider the merits of a tardy 12(b)(3) motion which is filed before trial and which is denied on the merits by the district judge. We reasoned that the policy of Rule 12(b)(3) is not implicated by a motion to suppress which is filed tardily but before trial begins. Id.; see also United States v. Cassity, 631 F.2d 461, 465 (6th Cir.1980). We accordingly consider the merits of Barber's motion to suppress.
 
 
 55
 Barber argues that his statement to Gibbs was involuntary because Gibbs elicited the statement by promising him that their conversation would be "strictly off the record." In McCall v. Dutton, 863 F.2d 454 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989), we set forth the test for voluntariness of a statement:
 
 
 56
 Threshold to the determination that a [statement] was "involuntary" for due process purposes is the requirement that the police "extorted [the statement] from the accused by means of coercive activity." Once it is established that the police activity was objectively coercive, it is necessary to examine [the defendant's] subjective state of mind to determine whether the "coercion" in question was sufficient to overbear the will of the accused. Finally, [the defendant] must prove that his will was overborne because of the coercive police activity in question. If the police misconduct at issue was not the "crucial motivating factor" behind [the statement], the statement may not be suppressed.
 
 
 57
 Id. at 459 (citations omitted). In applying this test, we review the trial court's findings concerning the circumstances of the statement for clear error, United States v. Wrice, 954 F.2d 406, 410 (6th Cir.), cert. denied, 112 S.Ct. 2286 (1992), but independently determine how the accused reacted to events and the legal significance of how he reacted. Id.
 
 
 58
 Our analysis focuses on the third prong of the McCall test. Even if the first two prongs of the test somehow were met here, it is clear that Gibbs's "deception" was not the "crucial motivating factor" behind Barber's statement. Rather, the record indicates that Barber regarded Gibbs's visit as an opportunity to convince Gibbs of his innocence. After considering Barber's testimony on the issue, the district judge observed:
 
 
 59
 [Barber] was very well aware of the situation and his rights. He knew who the officer was. He knew that he was the officer who, quote, got Glenn [Carter]. He knew he was a suspect....
 
 
 60
 (App. at 141.) Knowing the circumstances, Barber proceeded to present his exculpatory "story." The district judge found that Barber gave his statement "in an attempt to convince Mr. Gibbs that in fact he didn't have anything to do with [the conspiracy] and seemed to be the purpose for him talking to Mr. Gibbs." (App. at 142.) We agree that Barber's statement was a considered attempt to forestall his indictment. His statement was voluntarily made.
 
 VI.
 
 61
 Barber challenges his sentence on two grounds. First, he argues that his sentence was improperly enhanced by the district judge's finding that Barber was a "manager or organizer" within the meaning of U.S.S.G. Sec. 3B1.1. We review this finding for clear error. United States v. Gibson, 985 F.2d 860, 865 (6th Cir.), cert. denied, 113 S.Ct. 2981 (1993). Barber's argument is patently without merit because there was overwhelming evidence that Barber carefully directed the cocaine distribution scheme in question.
 
 
 62
 Barber also argues that the district judge incorrectly found that he obstructed justice within the meaning of U.S.S.G. Sec. 3C1.1. The application note to section 3C1.1 provides that an obstruction of justice enhancement is appropriate when the defendant is guilty of "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so[.]" We review the factual findings supporting a section 3C1.1 enhancement for clear error. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, 111 S.Ct. 2246 (1991). Here, the district judge found that Barber's statement to Dennis about taking out a hit on Carter was an attempt to intimidate a witness. This finding was not clearly erroneous.
 
 
 63
 AFFIRMED.