791 F.2d 935
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA Plaintiff-Appellee,
v.
TERRY PATRICK LANDRUM, Defendant-Appellant.
 85-5596
 United States Court of Appeals, Sixth Circuit.
 4/8/86
 
 AFFIRMED
 E.D.Ky.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY
 BEFORE: MERRITT and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Terry Patrick Landrum, was charged with a violation of 18 U.S.C. Sec. 2113(a), (d) (1982), for his armed robbery of a branch of the People's Liberty Bank of Northern Kentucky. Landrum, by pretrial motions, sought to suppress evidence found by police: (1) within a suitcase in the trunk of his girlfriend Brenda Rice's car, and (2) within Brenda Rice's residence. Upon a reference, the magistrate held an evidentiary hearing, and submitted a report and recommendation that the evidence found at Brenda Rice's residence and in her car should not be suppressed. Judge Bertelsman, after considering the magistrates' reports and the objections to it, denied both of Landrum's motions to suppress.
 
 
 2
 During its case-in-chief at trial the United States introduced evidence seized from both the automobile and residence of Brenda Rice, despite Landrum's objections. The jury returned a guilty verdict as charged. The district court sentenced Landrum to twenty-five years imprisonment under 18 U.S.C. Sec. 4505(a) (1982) and ordered restitution in the amount of $20,054. Landrum appealed and we affirm.
 
 I.
 
 3
 On June 14, 1984, the Thomas More Branch of the People's Liberty Bank and Trust Company in Crestview Hills, Kentucky, was robbed at gunpoint of $20,054. Included in the money taken were 'bait bills' or bills which had been recorded by bank personnel and placed in tellers' drawers for identification should a robbery occur. The gunman was generally described as a white male, 25-35 years of age, 175 to 250 pounds, with light complexion and stocky or sloppy build. The robber carried a pistol, three red sticks with wicks similar to railroad flares, represented to be dynamite, and three shopping bags. A shot was fired by the robber directly over the branch manager's head. A video tape of the robbery was retrieved from bank cameras, introduced at trial and played to the jury. In addition to 'bait bills' being taken, Jenny Treadway, a teller, testified that a 'money strap' bearing her name, the symbol '$1,000,' the bank's name and dated June 13, 1984, was also taken by the robber.
 
 
 4
 Approximately two weeks later late at night, the local Tennessee sheriff received a report of a vehicle being driven recklessly through Maynardsville, Tennessee. Deputy Sheriff Muncie responded and came upon an automobile near Maynardsville weaving from one side of the road to the other. Muncie put on his blue lights and siren, but the driver disregarded him and tried to outrun the police car. At a curve, the pursued automobile struck rails on both sides of the road, then crashed. The driver, later identified as Brenda Rice, was taken from the car, charged with drunken driving, and put in Muncie's cruiser. The passenger, later identified as defendant Landrum, was removed by Muncie with assistance of other officers. The police observed a clear plastic bag containing 37 white pills stuck tightly and concealed under Landrum's left armpit. The officers recognized the pills as 'qualudes' bearing distinctive markings. The police searched Landrum after he appeared to be under the influence of alcohol or drugs. The officer conducting a 'pat-down' search felt a large bulge in Landrum's right front pocket and another in his left rear pocket. Upon investigation, the officer found both to be bundles of cash. The officers then decided to search the automobile for additional drugs. The police had the car, which was obstructing the highway, taken to a public garage in Maynardsville.
 
 
 5
 Rice and Landrum were taken to the Union County jail for booking. At the jail, Landrum gave a false name and the police found $1683 in his pockets. Brenda Rice identified herself and also produced currency in excess of $500 hidden on her person. The car was registered in Brenda Rice's name.
 
 
 6
 The police thereafter conducted an inventory search of Rice's car. They opened a duffel bag in the trunk and found a large number of qualudes. Inside the bag, the police found a kit containing $4,000 in cash bound with rubber bands in four equal stacks.
 
 
 7
 Police officer Breeding interviewed Landrum within a few hours in the early morning at the Union County jail. Landrum again falsely identified himself as James G. Holley and claimed the duffel bag and the $4,000 in cash, explaining that he had borrowed the money from his mother. During the interview, Landrum gave Breeding different birthdates and birthplaces. Landrum also stated he had met Rice three weeks earlier in Kentucky.
 
 
 8
 Breeding separately interviewed Brenda Rice, who also claimed the $4,000. She asserted the money had come from three banks in Kentucky and in Ohio. Rice identified Landrum as 'John Hoberdick.' Breeding contacted the FBI, and determined Landrum's true identity. The FBI examined the money found in the bag, which included 'bait' money taken during the People's Liberty Bank robbery. The court admitted into evidence those items found in the car.
 
 
 9
 A few days later an FBI agent presented an affidavit in support of an application for a search warrant of the Brenda Rice residence to a United States Magistrate in Covington, Kentucky. This affidavit included facts concerning the robbery, the arrest of Rice and Landrum together in Tennessee, and an explanation of the money found, the close proximity of the Rice residence to the victim bank, and information from Rice's neighbors placing Landrum at the Rice residence before an just after the robbery, and that Landrum was a parole violator. The magistrate determined that probable cause existed to conduct a search of that residence for evidence relating to the bank robbery and signed a warrant authorizing a search, which was conducted during daytime hours. During the search the police discovered a railroad flare, photos of Landrum, surgical gloves, men's clothing, and a money strap from the People's Liberty Bank dated June 13, 1984, bearing the name J. Treadway. Landrum was not present at the Rice residence during the search.
 
 II.
 
 10
 In United States v. Ross, 456 U.S. 798 (1982), the Supreme Court held that the scope of the warrantless search authorized by the automobile exception 'is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' Id. at 825. In United States v. Johns, 105 S.Ct. 881 (1985), the Court made it clear that Ross applies even when police conduct the warrantless search of packages found in the automobile several days after they were removed from the automobile. The Court thus rejected the contention that Ross only allows warrantless searches of containers when 'the search occurs immediately as part of the vehicle inspection or 'soon thereafter." Id. at 886.
 
 
 11
 Under Ross, the police in the present case were entitled to search containers found in the automobile if probable cause existed to believe they contained the object of the search, either alcohol, some other drug, or contraband. After finding defendant with qualudes and a large amount of cash after he tried to elude the police, it was reasonable for the officers to believe the duffel bag might contain additional drugs. Johns makes it clear that the search did not become unreasonable because it was delayed. We find no error in admitting the evidence found in the automobile, and in the court's conclusion that there was probable cause to search the automobile, including the closed container. See United States v. Mazzone, 782 F.2d 757 (7th Cir. 1986).
 
 III.
 
 12
 To challenge the constitutionality of a search, an individual must demonstrate a legitimate expectation of privacy in the particular area searched. See Rakas v. Illinois, 439 U.S. 128, 148-49 (1978). Although a visitor to a home normally lacks standing, courts have held that a guest may have a legitimate expectation of privacy in the house or room that he is temporarily occupying. Factors used to distinguish a casual visitor from a guest with standing include whether the person under scrutiny had a key providing unencumbered access to the home or room, whether the person stored clothing and stayed overnight, and whether he could exclude others from the home or room. See United States v. Nabors, 761 F.2d 465, 469 (8th Cir.), cert. denied, 106 S. Ct. 148 (1985); United States v. Cassity, 720 F.2d 451 (6th Cir. 1983), vacated and remanded on other grounds, 104 S. Ct. 3581 (1984).
 
 
 13
 The magistrate determined that defendant had no legitimate expectation of privacy in the searched premises belonging to Rice, although he accepted defendant's contention that at one time he resided at that residence. The magistrate found that defendant failed to carry his burden of establishing an expectation of privacy under the circumstances. He noted that defendant did not establish he had a key to the dwelling or that he could exclude others. Defendant's principal contention is that a chief basis for the search warrant was the government's assertion that defendant had stayed at Rice's residence during the early part of June 1984. We agree.
 
 
 14
 But even if defendant does have standing to challenge the search, we find it was reasonable. The correct standard for issuing search warrants is whether the totality of the circumstances provide a substantial basis for finding probable cause. Illinois v. Gates, 462 U.S. 213 (1983). Supporting issuance of a search warrant in this case are defendant's possession of money stolen from the bank, his similarity to the somewhat imprecise description of the bank robber, and information connecting Rice and Landrum at the pertinent time.
 
 
 15
 Moreover, under United States v. Leon, 104 S.Ct. 3405 (1984), the magistrate also reasoned that evidence found in the house search in this case should not be excluded. Leon held that the fourth amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if ultimately the warrant is found to be invalid. Id. at 3412-23. Defendant does not challenge on appeal the magistrate's application of Leon to this case. We find that even if the search warrant was invalid, the evidence seized at the house is admissible under Leon.
 
 
 16
 We therefore AFFIRM the conviction of defendant Landrum.